Hancock, Jr., J.
(dissenting). In our view, New York law and the Federal Constitution require that the Appellate Division order be reversed. We agree with Special Term that petitioner Briggins has a constitutional right to a departmental reinstatement hearing.
The question, we emphasize, is not whether Briggins’ position with the New York City Police Department became vacant under the Public Officers Law upon his conviction of what was then assumed to be a crime. The question is whether Briggins, a detective with civil service tenure (see, Economico v Village of Pelham, 50 NY2d 120, 125, 126), had a property interest in his position — as determined by New York law — which entitled him to a reinstatement hearing under the due process guarantee of the Federal Constitution when it was determined that he had been convicted of conduct which was not a crime (see, Bishop v Wood, 426 US 341; Perry v Sindermann, 408 US 593; Board of Regents v Roth, 408 US 564; Economico v Village of Pelham, supra, at pp 125, 127). We conclude that he had such an interest.
In 1975 a jury found Briggins guilty of two counts of criminal possession of a forged instrument in the second degree. He had obtained a temporary motor vehicle operator’s permit and a license application and signed them with a pseudonym — presumably adopted to conceal from his wife the earnings he derived from a part-time job. As a result of the conviction, Briggins’ position became automatically vacant by operation of Public Officers Law § 30 (1) (e). On May 6, 1980, this court unanimously held that the documents did not constitute forged instruments, that their possession was not a violation of the Penal Law, and that Briggins’ actions were not criminal. Applying "the fundamental principle that a person cannot be found criminally liable for conduct which does not constitute a crime” (People v Briggins, 50 NY2d 302, 309 [emphasis added]), we reversed the Appellate Division’s *969 order affirming Briggins’ conviction and dismissed the indictment.
Following our decision, Briggins applied for reinstatement and, when the department refused, he commenced the instant CPLR article 78 proceeding. Special Term found that he was not entitled to automatic reinstatement but held that, as a matter of law, he was entitled to a departmental reinstatement hearing. The Appellate Division, citing Greene v McGuire (683 F2d 32 [2d Cir]), reversed and dismissed Briggins’ petition. It held that "all rights to the office disappeared” at the time of the conviction, and that denial "of a hearing in conjunction with petitioner’s application for reinstatement deprived him of neither liberty nor property, thus negating any claims with regard to constitutional due process.” (112 AD2d, at p 830.) The majority has adopted that decision.
Whether a particular public office creates a constitutionally protected property interest in the holder is, of course, a matter of State law (see, Board of Regents v Roth, supra, at p 577; Economico v Village of Pelham, supra, at p 125; Matter of Petix v Connelie, 47 NY2d 457, 459). Under New York law, Briggins, a permanent appointee in the classified civil service, unquestionably had a protected property interest in his position (see, Civil Service Law §§ 58, 75; Económico v Village of Pelham, supra, at p 125), albeit subject to Public Officers Law § 30 (1) (e) — i.e., to the office’s becoming vacant if the incumbent should be convicted of a felony (see, Económico v Village of Pelham, supra, at p 127).
Here, however, the Appellate Division has applied Public Officers Law § 30 (1) (e) with absolute effect even though the incumbent was not convicted of a felony. It has concluded that Briggins’ property interest was totally extinguished as a result of his conviction for conduct which, we have specifically held, was not a crime at all (People v Briggins, supra, at p 309), and that even his right to a reinstatement hearing has been lost. This construction is not permitted either by the plain wording of the statute or the dictates of common sense and fairness. Nor is such a harsh application of the statute necessary to further its purpose.
The Public Officers Law states in pertinent part:
"§ 30. Creation of vacancies
"1. Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof:
*970 "e. His [the incumbent’s] conviction of a felony, or a crime involving a violation of his oath of office [emphasis added].”
The language of the statute is unequivocal. "[U]pan an officeholder’s conviction of a felony, that office becomes vacant by operation of law” (Matter of Gunning v Codd, 49 NY2d 495, 500 [emphasis added]). Its purpose is equally free from doubt— not to punish the officeholder but to assure the public that its "officers are individuals of moral integrity in whom [it] may, without second thought, place [its] confidence and trust” (Matter of Toro v Malcolm, 44 NY2d 146, 152). In giving effect to this plain meaning and undeniably important public purpose we have not hesitated to apply the statute literally.
Thus, we have held that the automatic vacatur of the position of an incumbent convicted of a felony will not be affected by a reversal on appeal because "one convicted of a felony shall not retain a post of honor” (Matter of Obergfell, 239 NY 48, 50 [emphasis added]). We have adhered to this literal application acknowledging that there could be cases where "an innocent officer is unjustly convicted” (Matter of Toro v Malcolm, supra, at p 150). The justification for our refusal to make exceptions to the categorical rule of automatic vacatur on felony conviction lies not only in the statute’s clear language and public import, but also in two practical considerations — the advisability of avoiding a precedent which could "provide unjustified relief to others not equally deserving” (Matter of Toro v Malcolm, supra, at p 151), and "the recognition that a public officer’s conviction of a felony does not permit the cessation of governmental functions for the period required to exhaust the appellate process” (id., at p 150).
This strict enforcement of the statute — i.e., that "[e]very office shall be vacant upon the happening [of the incumbent’s] conviction of a felony” (Public Officers Law § 30 [1] [e] [emphasis added]) — presupposes, of course, the happening of the crucial event — the conviction of a felony. Here, that has not happened. To apply the statute to Briggins’ position one must conclude that the Legislature intended the words "conviction of a felony” to include convictions for conduct which was not felonious or even criminal. Such an interpretation is contrary to the accepted rule that the intent of a statute should be determined from the language used and should be given its natural and obvious meaning (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 94).
Nor can the policy considerations compelling automatic vacatur apply where an incumbent has been convicted for *971 noncriminal conduct. The Legislature could, with good reason, "strike the balance” in favor of the public’s interest in having officers of unquestioned "moral integrity”, and against the interest of an incumbent who has been found by a trier of the fact to have committed acts constituting a felony (see, Matter of Toro v Malcolm supra, at pp 151-152) — even when the conviction is later reversed. For it is reasonable to suppose that an incumbent, whom a jury has branded as a felon, is probably unfit for office. There is no basis for this assumption when the incumbent has been found guilty of conduct that is not a crime.
Clearly, the position we urge does not conflict with Matter of Toro v Malcolm (supra). There, the petitioner had been voluntarily reinstated and the sole issue before us was his entitlement to back pay. Here, the issue is not back pay or the vacatur of a public office, but a reinstatement hearing — i.e., whether the New York Legislature could have intended that Public Officers Law § 30 (1) (e) should be applied to deny Briggins a property interest sufficient to warrant due process protection (see, Bishop v Wood, 426 US 341, supra; Perry v Sindermann, 408 US 593, supra; Board of Regents v Roth, 408 US 541, supra; Economico v Village of Pelham, 50 NY2d 120, 125, 127, supra; see also, Greene v McGuire, 683 F2d 32, 35 [2d Cir], supra). And of course, Toro, unlike Briggins, was found guilty of authentically felonious conduct — burglary, petit larceny and impersonating a police officer — and his convictions were reversed for reasons not necessarily indicative of innocence (Matter of Toro v Malcolm, supra, at p 149).* For the *972 same reason, Greene v McGuire (supra), involving convictions on various felony charges of bribery and conspiracy, is distinguishable.
In granting Briggins a reinstatement hearing we would not be holding that a hearing is required whenever an incumbent officeholder’s felony conviction has been reversed on appeal as in Matter of Toro v Malcolm (supra) and Greene v McGuire (supra). For, as explained, where the incumbent has been convicted of an actual felony, the Legislature could, for reasons of policy, have decided that there should be no remaining property interest in the position (see, Economico v Village of Pelham, supra, at p 127). Absent a felony conviction, however, nothing in common experience or in the statutory purpose, and certainly nothing in the language of the statute itself, would justify that result.
The constitutional due process question presented depends upon this court’s delimitation of Briggins’ property interest in his position under New York law — whether he had "a legitimate claim of entitlement to it” (Board of Regents v Roth, 408 US 564, 577) which he "may invoke at a hearing” (Perry v Sindermann, 408 US 593, 601). The essence of constitutional due process, we have held, "is fundamental fairness” (Economico v Village of Pelham, supra, at p 125), and it may not be assumed that the Legislature ignored this basic concept in defining the property interest in circumstances such as Brig-gins (see, United States v Jin Fuey Moy, 241 US 394, 401; Dollar Co. v Canadian Car & Foundry Co., 220 NY 270, 275-278; see generally, McKinney’s Statutes §§ 143, 146, 150, to the effect that a statutory construction which is unreasonable, or works a hardship, or is unconstitutional should be avoided). It is fundamentally unfair that a tenured civil service officeholder should be totally divested of all rights in his position for conduct which was not criminal. To assume that the Legislature intended that Public Officers Law § 30 (1) (e) should be given such uncalled-for effect would conflict with basic rules of statutory construction (see, McKinney’s Statutes §§ 143, 146, 150) and with the plain language of the statute. If the Legislature did not so intend, then Briggins’ residual interest in his position was sufficient to trigger the due process requirement of an opportunity to prove "the legitimacy of his claim” (Perry v Sindermann, supra, at p 603).
Chief Judge Wachtler and Judges Simons, Kaye, Alexander and Titone concur; Judge Hancock, Jr., dissents and votes to reverse in an opinion in which Judge Meyer concurs.
*973 Order affirmed, with costs, in a memorandum.

 Contrary to the majority’s characterization of the holding in Matter of Toro v Malcolm. (44 NY2d 146), this court did not there establish an inflexible rule precluding any relief, regardless of the circumstances, for a public official whose conviction is reversed. Rather, this court simply refused "to establish * * * a general rule which would provide unjustified, relief’ to undeserving officers (Matter of Toro v Malcolm, supra, at p 151 [emphasis added]). Denying the specific relief requested under the facts of that case, the majority of the court in Toro explained that "a general rule * * * that public officers whose convictions have been reversed be automatically reinstated to their former office and awarded back pay, would apply to all public officers whose convictions were reversed regardless of the basis for the reversal” (id. [emphasis added]).
The position we urge is entirely consistent with that holding. We are, of course, not positing a "general rule”, "regardless of the basis for the reversal”, or that defendant is entitled to be "automatically reinstated” and "awarded back pay”. We simply cannot agree that Public Officers Law § 30 (1) (e) was ever intended to have the arbitrary effect which the majority holds is mandated in this case by Matter of Toro v Malcolm.