OPINION OF THE COURT
William P. Warren, J.
This court has before it applications brought on by the signing of an order to show cause on June 11, 1993 and a second order to show cause on June 17, 1993 seeking an order pursuant to 42 USC §4582 (renum 42 USC § 290dd-3) and subpart (E) of 42 CFR part 2 directing that this court determine whether good cause exists for the disclosure of certain objective data pertaining to the alleged treatment of the respondent at four different substance abuse/psychiatric facilities, and if the facts and circumstances necessitating disclosure of the information outweigh possible adverse effects upon the successful treatment and rehabilitation of the respondent, the physician/patient relationship, and the treatment program, ordering that the said facilities and a named person from each facility be authorized pursuant to 42 CFR 2.61-2.64 to disclose to the court and/or certain named parties the *790 disclosure of essential information which shall be described by the court and to direct that each said individual be prepared to testify at a hearing regarding such information. The application is supported by an affirmation of Barbara M. Wilmit, an attorney for the Rockland County Department of Social Services (undated), and the affirmation of G. Nicholas Del Pizzo, an attorney for the Rockland County Department of Social Services (undated). The attorney for the respondent has submitted an affirmation dated June 21, 1993 opposing the application.
Opposition to the application has been submitted on behalf of the Hazelden Fellowship Club New York through a letter from Terry L. Slye dated June 21, 1993, a second letter of July 1, 1993 from Terry L. Slye; opposition has been received from Arms Acres, Inc. by affidavit of Sarah W. Birn, sworn to June 19, 1993 and a reply affirmation of Sarah W. Birn affirmed July 6, 1993; opposition has been submitted from Four Winds Hospital by Moira Morrissey by affirmation dated June 18, 1993; opposition has been submitted on behalf of the Washton Institute by letter of June 21, 1993 from Wilfred T. Friedman. A reply affirmation of June 29, 1993 was submitted by Barbara M. Wilmit. A further affirmation of June 30, 1993 was submitted by Michele Katz.
A motion for permission to appear pro hac vice has been made by Terry L. Slye, to enable him to represent the Hazel-den Fellowship Club for this proceeding. An affidavit in support thereof has been submitted by Mr. Slye and upon review of that affidavit, the court grants the application to permit him to appear and file papers before this court in this matter as attorney for Hazelden Fellowship Club.
This is a child neglect proceeding in which it is alleged that the respondent has been taking and abusing codeine, valium and demerol for the last year and that she has been using cocaine and abusing alcohol on a regular basis for the past six months. It is further alleged that she was breast feeding a child during the period of time that she was abusing the aforementioned substances. There are two allegations with regard to automobile accidents while the children were in the vehicle and it is alleged that on November 15, 1992 the respondent took the children for a drive despite a warning from a Child Protective Service caseworker to refrain from doing so. On that date it is claimed she was under the influence of drugs when she returned home with the children. It is also claimed that two days later, on November 17, 1992, *791 the respondent admitted to members of the Palisades Park Police Department and Child Protective Service that she has been using cocaine and is a substance abuser.
The petitioner brings on this application and seeks to have the court determine whether good cause exists for the disclosure of certain information from the aforementioned facilities. It is claimed in the moving papers that information from the facilities will be crucial to the petitioner being able to present sufficient testimony at the hearing to sustain its burden of proof. It is further claimed that there is no other competent source for the information.
Three of the four facilities involved in this proceeding are governed by provisions of the United States Code and the Code of Federal Regulations (42 USC § 290ee-3 [governing drug abuse]; 42 USC § 290dd-3 [governing alcohol abuse]; 42 CFR part 2 [confidentiality of alcohol and drug abuse patient records]). Those Federal statutes and regulations apply to the Hazelden Club New York, Arms Acres, and the Washton Institute. Under New York State law these facilities must comply with the applicable sections of the New York State Mental Hygiene Law contained in article 23 thereof. Four Winds Hospital is a private free-standing psychiatric hospital licensed by the New York State Office of Mental Health and governed by articles 31 and 33 of the Mental Hygiene Law.
The opposition to the application relies upon New York State Mental Hygiene Law § 23.05 as well as the Federal statute and regulations dealing with the confidentiality of alcohol and drug abuse patient records. Distinction must be made between the three facilities which are subject to the Federal Alcohol and Drug Abuse Regulations and section 23.05 of the Mental Hygiene Law and the one facility, Four Winds Hospital, which is a psychiatric hospital and, therefore, not governed by the aforementioned regulations. As to the Four Winds Hospital, the applicable statutory provision is section 33.13 of the New York Mental Hygiene Law.
Turning the court’s attention first to the three facilities involved with substance abuse programs, it is important to analyze Mental Hygiene Law § 23.05. Pertinent portions of that section read as follows:
"(a) Notwithstanding any other provision of law including but not limited to the election law, no person’s rights as a citizen of the United States or of the state of New York shall be forfeited or abridged because of such person’s participation *792 in a substance abuse program. Such participation shall include but is not limited to the certification as substance dependent of a person to the care and custody of the office or the transfer of such person to the care and custody of the office under previously existing provisions of law. The facts, proceedings, application or treatment relating to a person’s participation in a substance abuse program shall not be used against such person in any action or proceeding in any court. * * *
"(c) All records of identity, diagnosis, prognosis, or treatment in connection with a person’s receipt of substance abuse services shall be confidential and shall be released only in accordance with applicable provisions of the public health law, any other state law, federal law and court orders.”
For this court to arrive at a decision in this matter, it is necessary for it to construe subdivisions (a) and (c) of Mental Hygiene Law § 23.05. On the one hand, the excerpt from section 23.05 (a) would appear to create an absolute prohibition upon the use of any of the "facts, proceedings, application or treatment” in any action or proceeding. However, subdivision (c) states that records may be released in accordance with the Public Health Law, State law, Federal law and court orders. Certain rules of statutory construction are helpful in the court’s analysis of these two sections.
In construing a statute, all sections of the law must be read together to determine its fair meaning. (McKinney’s Cons Laws of NY, Book 1, Statutes § 130.) Generally, all parts of a statute are to be harmonized with each other, as well as with the general intent of the whole statute in arriving at an interpretation of the meaning. (People ex rel. Jackson v Potter, 47 NY 375; Matter of Anderson v Board of Educ., 46 AD2d 360, affd 38 NY2d 897; Honeoye School Dist. v Berle, 72 AD2d 25.) The legislative policy behind articles 19, 21, 23 and 25 of the Mental Hygiene Law has been set forth in section 19.01. Therein it provides: "Alcoholism, substance abuse and chemical dependence pose major health and social problems for individuals and their families when left untreated, including family devastation, homelessness, and unemployment * * * The tragic, cumulative and often fatal consequences of alcoholism and substance abuse are, however, preventable and treatable disabilities that require a coordinated and multifaceted network of services * * * Substantial benefits can be gained through alcoholism and substance abuse treatment for both addicted individuals and their families * * * The pri *793 mary goals of the rehabilitation and recovery process are to restore social, family, lifestyle, vocational and economic supports by stabilizing an individual’s physical and psychological functioning.”
It cannot be argued against that the confidential nature of the treatment process in substance abuse facilities is an extremely important aspect of those programs. The affidavit of Patricia L. Owen, Ph D, submitted in connection with this application attests to the truth of that statement. Dr. Owen is Director of Research for Hazelden Foundation and has worked in the field of chemical dependency treatment for 15 years. Dr. Owen states that the only way an addict or an alcoholic can begin recovery is to find appropriate ways to depend on people, rather than chemicals. She goes on to advise the court that most patients begin with an inclination not to trust others or reveal sensitive information. Consequently, only through assurances of confidentiality and the experience that confidentiality will be maintained, will clients begin to disclose information. If that confidentiality is broken over the objection of a patient, that patient will be far less likely ever again to be willing to make disclosures to any program or counselor. She adds that of even greater damage is that word will spread among patients that confidentiality is not maintained, thereby causing many patients to become less willing to make disclosures or even seek treatment. The court believes that her statements are an appropriate adjunct to the legislative purposes since to further the objectives set forth in the legislative intent, the confidentiality which Dr. Owen refers to must be maintained.
The language of Mental Hygiene Law § 23.05 (a) makes an absolute statement that the facts relating to a person’s participation in a substance abuse program shall not be used against the person in any action or proceeding in any court. It is this court’s view that this particular provision cannot be overridden by the general statement contained in subdivision (c) that all records shall be released in accordance with applicable provisions of the Public Health Law, any other State law, Federal law and court orders. It is a well-established principle in the construction of statutes that, whenever there is a general and a particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable. (McKinney’s Cons Laws of NY, Book 1, Statutes § 238.) Consequently, it is this court’s interpretation of section 23.05 of the *794 Mental Hygiene Law that subdivision (c) thereof applies when records are sought to be released in the context of a proceeding wherein they are not being used against such person. Section 23.05 (a) is extremely clear. Where the words of a statute are free from ambiguity and express plainly and clearly the legislative intent, it would not be proper to resort to other means of interpretation. (McKinney’s Cons Laws of NY, Book 1, Statutes § 76.) There exists no ambiguity in the last sentence of section 23.05 (a). Therefore, subdivision (c) must be read in such a way as to be applicable only to those situations which are not addressed by the last sentence of section 23.05 (a), which sentence absolutely prohibits the facts relating to a person’s participation in a substance abuse program from being used against that person in any action or proceeding in any court.
It is important to note that the application to obtain records is made in connection with the fact-finding proceeding, Family Court Act § 1044. In this phase of the proceeding the respondent is charged with neglecting her child. Clearly, the use of the records sought herein must be considered as against the respondent since it is being offered to prove the neglect alleged. However, should there be a finding of neglect and thereafter a dispositional hearing pursuant to Family Court Act § 1045, a different result is possible. The purpose of a dispositional hearing is to determine what order should be made that is in the best interests of the child in order to protect the child from any further neglect or abuse. It is not a proceeding brought against the respondent and, therefore, a different result as to the use of those records may occur in such a proceeding.
The Federal regulations expressly provide that if a State’s law is more protective of patient records than the Federal regulations, the State law is not preempted and governs. (42 CFR 2.20.) Therefore, it is not necessary for the court to engage in an analysis of the Federal regulations and statute, since the State statute is more restrictive in this situation.
Arguments have been made that section 1038 (a) of the Family Court Act in effect supersedes the prohibition of section 23.05 of the Mental Hygiene Law. Those arguments are not persuasive. In support of the argument there is cited Matter of Gigi B. (71 Misc 2d 176), wherein Judge Gartenstein, in 1972, held that since the enactment of section 1038 came four years subsequent to that of what was then article 9 of the Mental Hygiene Law, it is presumed that the Legislature *795 knew the absolutes of article 9 were diminished by the absolutes of section 1038. He held accordingly, section 1038 being more recent, it must be given overriding effect. Family Court Act § 1038 was enacted in Laws of 1970 (ch 962). By chapter 251 of the Laws of 1972, the New York State Legislature enacted then section 81.17 of the Mental Hygiene Law. This section was then changed to Mental Health Law § 23.05 (a) by the enactment of chapter 471 of the Laws of 1980, also known as the Drug Abuse Omnibus Bill. The language of Mental Health Law § 23.05 (a) differed significantly from its predecessors, Mental Health Law § 81.17 and § 206-b.
Family Court Act § 1038 was added by the Legislature in chapter 962 of the Laws of 1970. Although a minor language change was made in Laws of 1989 (ch 272), it remains virtually identical to that enacted in 1970. Consequently, the logic for Judge Gartenstein’s decision is no longer applicable since the specific provisions of section 23.05 (a) have been continued by the Legislature in spite of Family Court Act § 1038. Therefore, it must be assumed that the Legislature intended the restrictions contained in section 23.05 to operate as a viable statute and not be diminished by section 1038 (a). Were this not the case, the Legislature could have provided in 1980 when section 23.05 (a) was again reenacted that it would be subject to the provisions of Family Court Act § 1038 (a).
It must also be noted that Family Court Act § 1046 contains a number of special evidentiary rules applicable to only child neglect and abuse proceedings. Within that statute the Legislature provided that certain privileges do not apply. (See, Family Ct Act § 1046 [a] [vii].) It is significant to note that no reference is made to the restrictions contained in section 23.05 (a) of the Mental Health Law.
It is argued that there are competing policy interests at issue here. On the one hand there is the legislative policy of providing assistance to those who suffer from substance abuse, while on the other is the policy of protecting children from neglect and abuse. It is the function of the Legislature, not the courts, to reconcile those competing public issues. The statute enacted by the Legislature, Mental Health Law § 23.05 (a), is so clear in its prohibition as to leave no room for this court to interpret it in such a way as to have it overruled by child neglect or abuse considerations. Perhaps there should be an exception in Mental Health Law § 23.05 (a) where child neglect or abuse is concerned, or perhaps not. The issue is one for the Legislature to determine. The legislative enactments to *796 date leave no doubt that the material sought herein cannot be used against the respondent, even where child abuse or neglect is involved.
A different situation is presented with regard to the application for the release of information from the Four Winds Hospital. That facility is a psychiatric facility governed by articles 31 and 33 of the New York State Mental Hygiene Law. The applicable section is 33.13 (c) which provides, in relevant part, "[s]uch information about patients or clients reported to the offices, including the identification of patients or clients, and clinical records or clinical information tending to identify patients or clients, at office facilities shall not be a public record and shall not be released by the offices or its facilities to any person or agency outside of the offices except as follows: 1. pursuant to an order of a court of record requiring disclosure upon a finding by the court that the interests of justice significantly outweigh the need for confidentiality”.
The affirmation of Moira Morrissey who is the attorney for the Four Winds Hospital has stated that it is the usual practice of the hospital to provide the records to the court pursuant to a court order for a review and a determination as to the need for and extent of disclosure. The usual practice appears to be appropriate in this situation and, therefore, the court will direct that the records be provided to the court so that it may review them and determine whether it is necessary that they be disclosed. It should be noted that the court will comply with the statutory criteria in arriving at that determination in that it will seek to determine whether the interests of justice significantly outweigh the need for confidentiality in arriving at that decision. Therefore, the Four Winds Hospital is directed to provide these records to the court on or before July 29, 1993.